UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| PAUL MOSS | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | 1:03-cv-400/1:99-cr-31 |
| | ) | Judge Curtis Collier |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM**

Petitioner Paul Moss ("Petitioner") filed a *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255 (Court File No. 1).[1] Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a one-year statute of limitations for filing a § 2255 motion. *See* 28 U.S.C. § 2255. On August 20, 1999 Petitioner pleaded guilty to possessing cocaine base with the intent to distribute in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(I); and possessing cocaine base with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Crim. Court File No. 15). On November 5, 1999, Petitioner was sentenced to a 300 month term of imprisonment. Petitioner's judgment was entered on November 10, 1999. Petitioner did not file a notice of appeal or move for an extension of time to file a notice of appeal. Therefore, Petitioner's judgment became final on November 22, 1999.[2] *See* Fed. R. App. P. 4(b);

---

[1] In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in petitioner's § 2255 motion filed herein, which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:99-CR-31, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

[2] The ten day period following November 10, 1999 ended on November 20, a Saturday. Therefore, the judgment did not become final until Monday, November 22. *See* Fed. R. App. Proc.

1

*Sanchez-Castellano v. United States*, 358 F.3d 424, 425 (6th Cir. 2004). Since Petitioner's judgment became final on November 22, 1999, the statute of limitations began to run on November 22, 1999. *See* 28 U.S.C. § 2255. Consequently, Petitioner had until November 22, 2000 to file a § 2255 motion.

It appears Petitioner's § 2255 motion was delivered to prison authorities on November 13, 2003. A motion filed by a prisoner is deemed filed when given to the prison authorities for mailing. *In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997) (citing *Houston v. Lack,* 487 U.S. 266, 270-71 (1988)); *See* Fed. R. App. P. 4(c). Petitioner's motion therefore is treated as filed on November 13, 2003. Thus, the motion was filed almost three years after the statute of limitations had run.

Petitioner argues equitable tolling should apply thereby making his motion timely (*See* Court File No. 2). For the following reasons, the Court will not equitably toll the applicable statute of limitations and therefore will **DENY** Petitioner's § 2255 motion.

## I. RELEVANT FACTUAL BACKGROUND

Petitioner was arrested on May 13, 1999. Due to Petitioner's indigent status, the Court appointed Attorney David Ness[3] to represent Petitioner (Crim. Court File No. 5). Although Petitioner was appointed counsel he was ordered to endorse a $4,800.00 check and give the check to the Clerk's Office in case he was required to repay the government for the cost of his attorney

---

26(a).

[3]David Ness was an attorney with the Federal Defenders Services of East Tennessee. This is the entity that provides defender services for indigent criminal defendants in this district.

(*Id.*).[4] Petitioner pleaded guilty and was sentenced on November 5, 1999 (Crim. Court File No. 17). At sentencing, Petitioner was ordered to pay a special assessment of $300.00 but due to his "inability to pay" he was not required to pay a fine (*Id.*; Crim. Court File No. 20). According to Petitioner[5] the remaining facts are as follows:

After sentencing, Mr. Ness told Petitioner he would file an appeal on Petitioner's behalf if Petitioner requested him to do so (Court File No. 2, p. 5). However, Mr. Ness did not inform Petitioner about the time limit for filing a notice of appeal (*Id.*). On January 2, 2000, Petitioner sent a letter to Mr. Ness requesting Mr. Ness to file an appeal (*Id.* at pp. 5, 9). Mr. Ness responded by letter and told Petitioner the time for filing an appeal passed (*Id.*). At some unspecified point in time, Mr. Ness advised Petitioner not to discuss his case with anyone else (*Id.* at p. 6).

While serving time in a state prison, Petitioner became ill and was transferred to a federal prison in Ashland, Kentucky. This transfer took place on April 25, 2001 (*Id.*). While in federal prison, Petitioner overheard a conversation in which another prisoner stated his counsel had been filing appeals on his behalf for over twelve years (*Id.*). After hearing his fellow prisoner's statement, Petitioner twice requested Federal Defenders Services of Eastern Tennessee to tell him the status of his appeal or to file an appeal on his behalf (*Id.* at pp. 6, 10-11). On March 27, 2002 the Federal Defenders Services of Eastern Tennessee sent a letter to Petitioner explaining an appeal could not be filed more than ten days after he was sentenced (*Id.* at pp. 7, 12).

---

[4] The Court has no record of any such check being given to the Clerk's Office by Petitioner (*See* Court File No. 2, p. 5).

[5] In determining whether equitable tolling should apply in this case, the Court will, in absence of clearly contradictory evidence, assume Petitioner's allegations are true. The Government did not file a response so it is unclear whether the Government contests any of Petitioner's allegations.

3

**II.     DISCUSSION**

Petitioner carries the burden of proving the doctrine of equitable tolling should apply. *See Dunlap v. United States*, 250 F.3d 1001, 1010 (6th Cir. 2001). In determining whether Petitioner has met his burden, the Court considers the factors set forth in *Andrews v. Orr,* 851 F.2d 146 (6th Cir. 1988): (1) Petitioner's lack of notice of the filing requirement; (2) Petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) Petitioner's reasonableness in remaining ignorant of the legal requirement for filing these new claims. *See Dunlap*, 250 F.3d at 1009-10. The fourth factor, absence of prejudice to the respondent, is only considered if the petitioner satisfies the other four factors of the test. *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003). These factors are not necessarily comprehensive and are not relevant in all cases. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). In applying the *Andrews* factors, the district court is to keep in mind "that equitable tolling be applied sparingly." *Dunlap*, 250 F.3d at 1008-09.

After considering the above factors, the Court does not agree the doctrine of equitable tolling should be applied in this case.[6] Petitioner contends equitable tolling should be applied because:

(1) Petitioner was ignorant of the legal requirements;
(2) Counsel instructed Petitioner not to discuss his case with anyone else;
(3) When Counsel advised Petitioner his "appeal" was too late he did not explain to Petitioner that he was not referring to a § 2255 motion;
(4) Petitioner was ill;

(5) Petitioner was in state custody during the ten-day appeal window;
(6) Petitioner requested his case be directly appealed on January 2, 2000; January 2, 2002; and March 18, 2002;

---

[6] Since the Court concludes Petitioner has not met the second, third, and fifth *Andrews* factors, it will not address the fourth *Andrews* factor.

4

(7) Petitioner overheard a fellow inmate state he had been in prison for twelve years and his attorney was still filing appeals on his behalf; and

(8) The Court ordered Petitioner to pay $4,100.00 to his attorney which Petitioner thought included his appeal.[7]

(Court File No. 2).

### A. Lack of Notice and Lack of Constructive Knowledge

Petitioner apparently argues the first and second *Andrews* factors are met in this case because he was ignorant of any filing deadline. After all, Petitioner is a *pro se* litigant with no legal training. However, this argument only satisfies the first *Andrews* factor. Petitioner still had constructive knowledge of the filing deadline. Section 2255 clearly states: "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from...the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255. Petitioner knew his judgment was final when Mr. Ness informed him of this in January 2000. Therefore, Petitioner constructively knew he had to file his § 2255 one year after his judgment became final. "[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999); *see also*, *Rose v.* Dole, 945 F.2d 1331, 1335 (6th Cir. 1991) (stating "ignorance of the law alone is not sufficient to warrant equitable tolling"); Starnes *v. United States*, 18 Fed. Appx. 288, 293 (6th Cir. 2001) (noting "courts are reluctant to find that a lack of actual notice of the AEDPA, or ignorance of the law in general, may excuse a late filing"). Accordingly,

---

[7] Petitioner was required to endorse a check in the amount of $4,800.00 not $4,100.00 (Crim. Court File No. 5). Further, Petitioner is mistaken when he states that he was required to *pay* his court appointed attorney. He was only required to endorse a check. Payment was conditional on a future finding that Petitioner was not indigent (*Id.*). The Court has no record of the check making it to the Clerk's Office nor is there a record of any funds being disbursed to the government. Further, at sentencing, the Court implicitly found Petitioner to be indigent when it waived a fine "because of [Petitioner's] inability to pay" (Crim. Court File No. 20).

Petitioner has not met the second *Andrews* factor.

### B.     Diligence in Pursuing Rights

Petitioner failed to diligently pursue his rights. The clearest evidence of this is the length of time that passed after the statute of limitations ran. Almost three years passed before Petitioner filed a § 2255 motion. *See Allen v. Yukins*, 366 F.3d 396, 404 (6th Cir. 2004) (refusing to equitably toll when petition was filed seven-months late); *Cook v. Stegall*, 295 F.3d 517, 518 (6th Cir. 2002) (same- one month late); *Dunlap v. United States*, 250 F.3d at 1010 (same- more than two months late). This is not a case where Petitioner had no notice that his judgment became final thereby justifying a late § 2255 motion. *See Miller v. Collins*, 305 F.3d 491, 495-96 (6th Cir. 2002). It was clearly explained to Petitioner by Mr. Ness about two months after his conviction became final that no appeal could be filed because the ten day notice of appeal window had passed. Despite this knowledge, Petitioner made no diligent effort to file a §2255 motion until almost three years after the statute of limitations had run. Moreover, when Petitioner became confused about the appeal requirements and requested Mr. Ness and/or the Federal Defender's office to tell him the status of his appeal or to file an appeal it was again explained to Petitioner the time for filing an appeal had passed. Yet, Petitioner waited over one year after this second explanation to file his § 2255 petition. Thus, it is not hard for this Court to conclusively determine Petitioner was not diligent in pursuing his rights.

### C.     Reasonableness in Remaining Ignorant of the Filing Requirement

A few of Petitioner's reasons why equitable tolling should apply in this case appear to go to the fifth *Andrews* factor- the reasonableness in remaining ignorant of the filing requirement. Petitioner argues it was reasonable for him to file an untimely motion because Mr. Ness informed

6

him not to discuss his case with anyone else. Since he could not talk about his case with anyone besides Mr. Ness, the argument goes, he had no means of learning about the filing requirement. Petitioner does not specify when Mr. Ness made this statement or outline the circumstances surrounding the statement. Most likely, Mr. Ness advice came soon after he began representing Petitioner and Petitioner should have understood the advice to apply only up until the point his judgment became final. After his judgment became final, Petitioner should have felt free to discuss his case with anyone that could have helped guide him through any post-conviction remedies he might seek. Regardless, even if Petitioner reasonably felt he could not discuss his case with anyone but Mr. Ness, it does not explain why Petitioner never discussed the possibility of filing a § 2255 motion with Mr. Ness. As discussed above, Petitioner had constructive notice, albeit through a statute, that a § 2255 motion had to be filed one year after his conviction became final. Yet, he never requested Mr. Ness to file a § 2255 motion nor did Petitioner make an attempt to file a timely motion on his own. Thus, Mr. Ness' advice does not provide justification to equitably toll the statute of limitations.

Petitioner next argues Mr. Ness confused him when he told him his "appeal" was too late. Specifically, Petitioner states Mr. Ness did not distinguish between a direct appeal and a § 2255 motion. The Court is unpersuaded. A § 2255 motion is not an "appeal"; rather, a § 2255 motion is a "collateral post-conviction means for a federal inmate to attack his conviction and sentence." *In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999). A § 2255 motion is filed in the federal district court that imposed the sentence, not in an appellate court. *Id.* Thus, from an objective point of view, when Mr. Ness informed Petitioner he no longer could "appeal" his sentence, it should have been clear to Petitioner that Mr. Ness was not referring to a § 2255 motion. In addition, the circumstances of

7

this case conclusively show from a subjective point of view that Petitioner had no reason to believe Mr. Ness was making reference to a § 2255 motion. Petitioner states in his § 2255 motion that he "sent a letter to his counsel on the date of January 2, 2000, outside of the ten-day period, evidencing his desire to appeal his case" (Court File No. 1, p. 7). By referring to the ten-day window Petitioner makes clear his letter to Mr. Ness concerned a direct appeal. Therefore, any response by Mr. Ness referring to an "appeal" would have been understood by Petitioner to be a reference to a direct appeal. Nevertheless, assuming Mr. Ness' statement was ambiguous, the statutory text of 28 U.S.C. § 2255 should have cleared up Petitioner's confusion. Section 2255 clearly states a motion must be filed one year after a judgment becomes final. *See* 28 U.S.C. § 2255; *see also Jurado v. Burt*, 337 F.3d 638, 644-45 (6th Cir. 2003) (explaining a petitioner's reliance on the unreasonable and incorrect advice of his or her attorney is not generally a ground for equitable tolling).

Accordingly, the fifth *Andrews* factor has not been met by Petitioner.

### D.    Reasonableness in Filing Late

Most of the reasons proffered by Petitioner do not exactly go to any of the *Andrews* factors. Instead, Petitioner gives general arguments as to why his untimeliness should be excused. The Court will address each of these general arguments in turn. Petitioner asserts his § 2255 motion was late in part because he was ill. While some circumstances surrounding an illness might present a need to apply the doctrine of equitable tolling, those circumstances are not present here. Petitioner has high blood pressure, diabetes, and glaucoma (Court File No. 2, p. 6). High blood pressure, diabetes, and glaucoma are each serious illnesses that should not be taken lightly. Yet, each are treatable and when under control should not prevent a person from filing a § 2255 motion with the Court or at the very least they should not prevent a person from requesting someone else to file a motion on their

8

behalf. Petitioner offers no evidence of trying to put a petition together before the limitations period ran or asking another to file a petition on his behalf. Further, it is clear Petitioner was healthy enough to write intelligible letters to Mr. Ness and to eventually file the current § 2255 petition. In addition, Petitioner suggests he was "seriously ill" around April 25, 2001 but by that date the statute of limitations had already run. Thus, Petitioner's illness does not provide justification in filing a late § 2255 petition.

Petitioner also argues the statute of limitations should be equitably tolled because he was incarcerated during the time when he could have filed a direct appeal. Although Petitioner was incarcerated during the ten day notice of appeal window this does not explain why he could not file a § 2255 motion one year after the notice of appeal window shut. Further, incarceration alone is not a good excuse. A prisoner has the necessary means to file the appropriate paperwork with the Court.

Next, Petitioner contends it was reasonable for him to file a late § 2255 motion because he requested Mr. Ness to file a direct appeal on his behalf. This argument holds no weight whatsoever. Although Petitioner requested an appeal to be filed, he was clearly instructed the time for filing an appeal had passed. Thus, it was clear to Petitioner his judgment was final and the one year statute of limitations had begun to run.

Petitioner argues his untimeliness should be excused because he overheard a fellow inmate state his attorney was still filing appeals on his behalf twelve years into his sentence. This fact simply does not help Petitioner's equitable tolling argument. Such a statement may have confused Petitioner about the ten day notice of appeal rule but it does not suggest in any way it was more reasonable for Petitioner to file his § 2255 motion after the statute of limitations had run.

Lastly, Petitioner contends the doctrine of equitable tolling should apply in this case because

9

the Court ordered him to pay his attorney and he thought this payment included his direct appeal. As mentioned previously, Petitioner was never required to pay his attorney. However, even if Petitioner was required to pay his attorney and the payment reasonably could be viewed as a payment for an appeal, this fact is not relevant to Petitioner's equitable tolling argument. Paying an attorney to file an appeal does not justify a very late § 2255 motion filed years after it became crystal clear to Petitioner that his attorney was not filing an appeal on his behalf.

### III. CONCLUSION

Since the Court concludes Petitioner has not met the second, third, and fifth *Andrews* factors, or presented any other reason for applying the doctrine of equitable tolling, the Court will deny Petitioner's request to equitably toll the applicable statute of limitations. Accordingly, Petitioner's § 2255 motion is untimely and will be **DENIED**.

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.[8] Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the

---

[8] The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States*, 117 F.3d 949, 951 (6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford*, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

10

Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893, 103 S. Ct. at 3394. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846, 78 S. Ct. 71, 2 L. Ed. 2d 56 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

Fed. R. App. P. 24(a) further requires the district court to certify in writing whether the appeal is taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R.App. P. 24(a), that any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

11

An order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**